© 2015 University of Georgia College of Agricultural and Environmental Sciences UGA Extension Office of Communications and Creative Services Final case of the morning is number 1750495, Ostiguy v. Equifax. And the first person up is Mr. McCarty. Pardon me? Certainly. Good morning. If it pleases the Court, my name is Dennis McCarty. I'm here to represent the appellants in this case. This is a Fair Credit Reporting Act case. The appellants argue today that Equifax and Chase Bank are and were reporting negative and derogatory information on the appellants' credit reports that do not belong to them. The accounts in question today are authorized user accounts. Authorized users are not contractually obligated to the account. They're not financially obligated to pay the account. An authorized user is added when a primary account holder simply calls the credit card issuer and requests that a certain individual is added to the account. There are not any credit checks on the authorized user. The only thing the primary account holder is required to have is their name and address. Once the primary account holder contacts the credit card issuer and requests that they be added, the authorized user is never even contacted. The actual credit card that is issued is sent to the primary account holder. The issue today is that when they are added, the trade line or the account that is being reported is mirrored onto the authorized user's credit report. The problem occurs when the primary account holder misses payments, has the account charged off because of missed payments, or maxes out the card. The authorized user is now held responsible and liable for their irresponsibility. A lot of times, at least in my experience with my practice, the authorized users can't even call and talk about the account. I'm not saying it's 100%. I'd never say that. Is this in the record? You're talking about your experience. You're sticking to the record, aren't you? Yes, sir. I'll stick to the record. Well, we don't need anecdotes unless they're in the record. That's fine. I understand. It is in the record that most of the times that the authorized user tries to call and discuss the issue, they won't talk to them because of that. That is in the record. So with the account being mirrored onto their credit report, the only thing they can do is to dispute it, saying, I'm not responsible for this account. I'd like to have it removed. And a vast majority of the times, they are. Experian is so sensitive to it that if the account goes delinquent, then they will automatically delete the account within their system. TransUnion will delete it upon a dispute, just instantly, no questions asked. And that is the record. Equifax normally will remove it upon dispute. But some of them slip by, slip through the cracks, as I argued, and they verify it and they continue to report the account. They're incredibly inconsistent. A majority of the time, well, I have the percentages of my experience in the record of disputing these over the last two years. Equifax has a policy of removing these. The problem is it's almost random. From a deposition we did, they stated that it's an ACDD process. They allow the data furnisher to make that decision. And I argued at length in the brief that the ACDD system, or at least parroting of information, is a flawed system. Well, one way to look at this, Mr. McCarty, is can four district judges all be wrong? Yes, that is my argument, actually, Your Honor. There were a number of these filed. I had two decisions go my way. Paralegals, were your paralegals the credit card holders in all those cases? I'm sorry, Your Honor? Was a paralegal of yours the credit card holder in all those cases, as in the case that you argued before us last month? My paralegal? You don't even recognize me? Oh, no, please, Your Honor. I recognize you, absolutely. Yeah. But I didn't understand the paralegal. Well, the lady was your paralegal who was the plaintiff in last month's case. Oh, oh, oh. Ah, yes. Actually, it wasn't my paralegal, but I understand, absolutely. That's why I didn't really register. I understand. All right. So, anyway, with the argument is that the statute, the case law that's involved, including the Fifth Circuit rulings, that these accounts just, they don't belong to them. And if they want to report the account as an authorized user, as I argued, that's okay. They can report the account that it's an authorized user. There's an easy solution. Don't report the derogatory information because they didn't miss the payment. It's not theirs, and they can't fix it if Equifax verifies the information after dispute. There's nothing else they can do. They're literally stuck with it. And in some cases, like Phil Moore in my argument, she doesn't even know who it belongs to. She's very elderly. She's guessing it belonged to her deceased husband. She thinks he probably, if it is his, added her before he died. She didn't know anything about it. And upon trying to get a home, this was held, you know, against her, and she couldn't get it removed. We feel that we argue that it is false on its face that if they're going to report information that belongs to another human being onto a consumer's credit report that does not belong to them, that's false on the face of the credit report and at the very minimum misleading. If they want to report the authorized user, we don't even have an issue with that. It's the negative history, the late payments, the charge-offs, the maxed-out cards that they didn't do that is at issue here because they're held responsible for it when they want to get loans. Well, of course, the fact that they're an authorized user and therefore used the card, they could be part of the reason for why the card was maxed out or why the card wasn't paid. Completely agree, Your Honor. And I have argued that that is an issue between the primary account holder and the authorized user because the primary account holder is financially obligated for that account. They are fully, 100 percent financially obligated when the authorized user is not. So if the authorized user is running up that card, then that's a discussion the primary account holder and the authorized user needs to have, not over a credit report reporting an account that the authorized user may not even know they have. Yes. I want to ask you a question about the Fillmore case simply from a jurisdictional point. As I understand it, Fillmore and there was another party, E-L-A-N, Elan. Yes, Your Honor. And Fillmore lost on a motion and then Elan remained in the case and then Elan was later dismissed. And again, we can check all of this, but I thought you might have it in mind. How do we have jurisdiction in that case? Was the notice of appeal filed after both parties were dismissed? If you don't remember, we'll check it. I just thought maybe you'd remember. From my best recollection, that Equifax filed a motion to dismiss first regarding the authorized user issue and Elan filed a motion to dismiss based on a statute of limitations issue. Right. I responded in one, the motion to dismiss on the statute of limitations issue against Elan. And then once Elan noticed or saw or read that Equifax's motion was granted, they filed one too. But the judge in that case took quite a while to rule on it and I just got a call and we settled the case. All right. We'll just check on that. So we dismissed them due to a settlement. And like I said, you know, the fact that another person's account is being reported onto a consumer that has no financial responsibility, no contractual obligation, and is highly possible, including with Fillmore, might not even know it's there is false on its face. And as this circuit has ruled, it could even be technically accurate. But if it's so misleading that it could, not that it did, but that it could lead to negative credit decisions, it's no longer accurate. And I argue that it's both. It's false because it's not theirs. And even if they did make some of the charges, they're not contractually liable for it. And the bigger picture here is that as widespread as this is, there's going to be a significant number of consumers that might not even know it's there because all that is needed is a name and address. Credit checks are not done. The authorized users are not contacted. And this, like I said, this goes against the authorized user's credit report and it directly affects their credit lending. Because obviously if you have derogatory remarks or derogatory account history, your credit score is going to be lowered. If your card is maxed out, it's going to be lowered. And in some of these cases, some of these balances were extraordinarily high. And an OSTA guy, it was his ex-wife. And she wouldn't let him off.  I didn't get into the details. And they didn't speak, so that may be part of the issue. I know that there was some issues there that they weren't communicating. But we disputed it, and it would not get removed when it was an ex-spouse. And I'm not saying it was an OSTA guy, even though he did say there were some issues. But sometimes when you have an ex, you're an ex for a reason. There could be some hostility there. Maybe the ex doesn't want to let you off because they just don't like you anymore. I mean, there's a big picture of if you need this removed, since you're not responsible for it, it shouldn't report as if you are responsible for it and you missed those payments and you had that account charged off or you maxed out that card when in reality there's no recourse there. Now, there is, like I said. Experian removes it. TransUnion removes it 100% of the time when I dispute it, which I put in the brief. Equifax will do it sometimes. I find it hard to believe when their standard is maximum accuracy how if you have an account and you dispute the account as being inaccurate and there are multiple accounts that are identical in status, type, and everything else, being authorized users, and they'll remove it one day for one account but they won't the other, there's no consistency there. The credit report by nature at that point would be inaccurate because it's basically how Equifax feels that day. I mean, that's how I argued it is there's no rhyme or reason other than the data furnisher instructs them to continue reporting it. And that is a serious flaw in the system because if a consumer disputes it, the Equifax will go to the data furnisher and if the data furnisher says we want it to continue to report, it'll continue to report, as in this case. And I had two very good illustrations of how inconsistent it is within my brief. There's also a guy who had two authorized user accounts on his credit report. My office disputed both of them on the same letterhead, same language. They removed one and they continued to report the other. And in the Johnson case, which I cite in here, he had five of them. I listed them all on my office, which I address here, disputed all five authorized user accounts on one letter. They removed, if I remember right, and it's in my brief, they removed two. I disputed the other three. I believe they removed two more and one remained. And my numbers may be a hair off on that, but it's within my brief of the step-by-step dispute process and what was removed and what remained. But it's so inconsistent that it's even on the same letter. I get Equifax is a big company. I get Citi and Chase are big companies. You still have to expect accuracy, number one. And number two is if it was different letters, maybe even different offices, different months, different years, maybe somebody had a bad day or something or maybe it was just overlooked, but on the same letter from the same office, same day, and they'll remove some and not others. I don't think we've received a response to that yet in any of the briefs that I've read through the district courts. As you know, I've had a number of these cases. The Honorable Judge Amos Mazant did rule for me in the Eastern District. There was a Western District ruling for me in the Magistrate, and I cite his position in here. And he was overruled by the Honorable Judge Yackel. I felt like some of their standards were even wrong. I address that in here. I believe it was Judge Ersa stated that the account was the standard was reasonable. They just have a reasonable duty to report accurately when the standard is maximum accuracy, and there is a big difference in there. And I do quote that case a couple of times of the case law in precedent that there's a difference, a big difference between accurate and maximum accuracy. You have time for rebuttal. Thank you, ma'am. All right. Thank you, Your Honor. Mr. Schoenfeld. Good morning, Your Honor. May it please the Court. Alan Schoenfeld for the Chase Defendants in Ostig and Frazier. My colleague, Mr. McCarty, concedes that Chase can furnish information concerning an authorized user account. He seems only to take issue with the reporting of derogatory information. But the FCRA confers no right to be free from truthful, derogatory, or negative information on credit reports. The FCRA provides a limited right of action against furnishers like Chase for failing to conduct a reasonable investigation into a consumer's dispute. To state a claim against a furnisher under Section 1681 S2B, a plaintiff must first allege, first, some factual inaccuracy in the credit information that was furnished, and second, how an investigation different from the one the furnisher conducted could have resulted in different information being furnished. In other words, the plaintiff has to show that there's something inaccurate or misleading about their credit report that would have been different if the furnisher had only done what's statutorily required of it. The plaintiffs in this case fail to plead either of these elements, and the district court's judgments can be affirmed on either independent ground. First, there's nothing inaccurate about the way plaintiffs' authorized user accounts are being furnished here. Plaintiffs concede that they were added as authorized users by their spouses, and they concede that the trade lines on their credit reports clearly indicate that they're authorized users on the accounts. There are little snapshots of both Ostegi's and Frazier's credit reports on page 16 of our brief. Those are in the record. They clearly indicate that these are being furnished as authorized user accounts. Plaintiffs don't allege that there's anything misleading about that presentation. They don't allege that any creditor would mistake their authorized user trade lines to mean financial responsibility for the accounts. Put simply, they don't allege anything inaccurate or misleading about the way their account information is furnished. Plaintiffs instead contend that furnishing any negative information about an authorized user is categorically unlawful, not because furnishing information about an authorized user is inaccurate or misleading, but because truthful information about an authorized user might have a negative impact on their creditworthiness. There's no authority for that position. In fact, it's contrary to legal requirements imposed on creditors under ECOA, the Equal Credit Opportunity Act, and Regulation B. Moreover, it's not an actionable proposition under the FCRA. The statute is meant to protect consumers from inaccurate or misleading information, not to protect them from true but negative information. If plaintiffs wanted to not be authorized users, they could have asked the creditor, Chase here, to be removed from the accounts and then to have the accounts removed from their credit reports. But they never did that. In essence, they want the pluses of being authorized users, access to accounts for which they have no financial responsibility, with none of the negatives. But that's not the office of the FCRA. The second independent ground for affirming the dismissal is that plaintiffs' claims fail because there's no factual information Chase might have uncovered in a different investigation that could have changed the outcome of plaintiffs' dispute. When a customer disputes a trade line by complaining to a credit reporting agency, the furnisher's obligation is to consult reasonably accessible information and verify the accuracy of what's being reported. In every Section 1681 S2B case, the plaintiff needs to identify some factual artifact, some additional factual information that would have been found by a different investigation and furnished to the credit reporting agency to make her credit report more accurate and less misleading. That's not what plaintiffs purport to do here. Plaintiffs don't posit any additional information that could have been found nor any factual clarification that could have been offered to resolve their FCRA claim. Instead, they want the information to be removed from their credit reports based on the legal argument that such information does not belong on their credit reports. But as courts have routinely held, furnishers cannot make that kind of legal determination. They can resolve factual inaccuracies but not disputes about the lawful status of authorized user accounts. That is emphatically the case when the only private right of action a consumer has against a furnisher concerns the reasonableness of its investigation. I'm obviously happy to take any questions the Court has or to cede the remainder of my time to my colleague from Equifax. No questions. Thank you, Your Honor. Mr. Brumbaugh. May it please the Court. Good morning. Pat Brumbaugh for Equifax, which is an appellee in all four of the consolidated cases. I intend to be very brief. Judge Bartskell, if I can help you first. I believe what happened in Fillmore is that after Equifax's motion was granted, and I believe that was a motion for judgment on the pleadings, Equifax asked the Court to enter a judgment as to Equifax specifically in the notice of appeal was from that separate judgment. Correct, Your Honor. Whatever it is. That's right. I confess I was not involved in the proceedings below, but that's docket entry 51, 2, and 3 in the Fillmore case. While we're on the subject of Fillmore, I think it's important. Well, it may not be important, but I do want to point out that the allegations about Ms. Fillmore not knowing that she was an authorized user on the account, those kind of came into the case in the appellate briefing, and they're actually not alleged in the complaint, and they're not part of the dispute letter that was sent to Equifax, the failure to investigate, which is part of the claim that's being asserted. So I'm not really sure that's part of the record. I'm not really sure it makes a difference, but I do want to point that out to you. I love to hear myself speak, but I can't improve on my colleague's presentation to you. The issues regarding accuracy are exactly the same as to Equifax as they are to Chase, and the claims in each of the four cases are not so different as there to be any material daylight between them. The fact of the matter is that part of the information that a furnisher provides to a credit reporting agency is the relationship of the consumer to the account that's being reported. That's the little box that Mr. Schoenfeld referred to that says authorized user. In other kinds of accounts, it might say individual or it might say joint. In most cases, it would be an individual account, which signifies that the consumer is the obligor on the account. If it's joint, that means they're a co-obligor with somebody else. If they're an authorized user, it means that they are not liable on the account. That is the information that then gets reported. There's no fact alleged in these complaints that would lead to a plausible inference of any kind that anybody was or could have been misled by that reporting. Mr. McCarty's real argument is that it's just not fair. There's something not fair about a creditor taking this information into account. Fairness being a goal of the FCRA, we understand, but Equifax's role in this credit system is to provide accurate information. It's not to ensure fairness or how creditors use that information. Evidently, and as is quite clear from the pleadings, from Mr. McCarty's pleadings, the largest credit scorer in the nation, the Fair Isaac Organization, which produces the FICO scores, it takes into account authorized user information knowing that it is authorized user information. There's no allegation that Fair Isaac is misled about what that information is like. I want to speak just quickly on consistency and inconsistency. I think the fact that Equifax responds differently to different disputes is different. It is not necessarily inconsistent. That is to say, it is not inconsistent to deal with different situations differently. And in the case of the Ostegine-Johnson disputes where there were different furnishers who provided authorized user information, there was a dispute made. Some of them came out, and some of them didn't. I would submit that the most likely, and this is not in the record, I can see, but the most likely explanation is that different furnishers provided different information and therefore had different sort of standing orders about how disputes for that kind of information were to be handled. I think it's that simple. That really doesn't have anything to do with accuracy. I'd love to answer questions if you all have any. I'm afraid not. Thank you very much. I ask you all to affirm. Thank you for your time. Thank you. Thank you. Mr. McCarty. To go back to the statement of were the judges inaccurate in some of their decisions, one thing I would like to address, and it's in the record of excerpt, actually what had taken place is I had filed a brief in the Osteguy case just by himself. It is case number 17-50495. And then Equifax and Chase and I got together and agreed that we would just go ahead for the ease of the court and for pleadings purposes to go ahead and consolidate the cases. But in the record of excerpt for Mr. Osteguy, and the record is 17-50495.472, the judge stated in his order of dismissal, it says, nor is the credit entry listing plaintiff as an authorized user of the account misleading in such a way as to the extent that it can be expected to adversely affect credit decisions. And I argued at length in my brief and in reply that the Third Circuit picked up from where the Fifth Circuit ruled in Sepulveda case, the Third Circuit picked up in the Siemens v. Temple University in the Third Circuit, and it starts on page bottom of 28 and goes to 29, and it says rather technically accurate information was misleading in such a way and to the extent that it can be expected to have an adverse effect generally is a question to be submitted to a jury on a claim under the SCRA contesting the reasonableness of the investigation. And that makes sense for the simple reason is that you're asking judges to make financial decisions on if it can negatively affect a credit decision or not. And as the Siemens case ruled, and then I argued here, is that that is the accurate ruling or that's the most appropriate ruling because it needs to be determined by a jury, not a judge. I feel like the judges would have a difficult time figuring out if it was misleading to lose a loan or not. What's your response, Mr. McCarty, to the fact that the claim is you're just concerned about fairness but you can't prove an issue of law? Well, Your Honor, as far as the fairness goes, this isn't about fairness. This is about accurate. It's about what's accurate and what's not accurate. I thought you had conceded that it's accurate that they are allowed to use the card. Yes, Your Honor. Authorized users are allowed to use the card. And my argument is that if the authorized user gets irresponsible, then that is a problem and an issue between the primary account holder and the authorized user, not the authorized user and the credit bureaus. There's no privity between an authorized user and any of these credit card holders. Chase is just one of them. This is industry-wide. You could be an authorized user on most likely most credit card issuers. But there's no privity. There's no contract signed. There's no credit checks. There's no obligation. And to mirror 100% of an account trade line onto someone's account, an authorized user's credit report that does not have any privity to the card as far as contractual, no obligation to pay it is inaccurate, especially when, as I argued, the bigger picture is even, I mean, this is very widespread. Authorized users are throughout the entire credit industry. So if the authorized user is not even able to address it because when they call, they can only talk to the primary because they don't even have a signed contract with the authorized user, there's only one recourse, and that's to dispute the account. And in most times, that's effective. Doesn't the CFPB require spouses to be on listed if they're authorized users? The CFPB states that it can be reported. They can report the spouse. The CFPB also says, which I argue in the brief, that if someone else's account information is being reported on the consumer's credit report, that the consumers will generally remove it. So they condone the removal of the account upon dispute. And I can go to that in the brief as well. I address that thoroughly and even include their website on page 39 that, yes, that is an accurate statement. The CFPB states that if they want to report a spouse that is on an authorized user account, they can. But they also say that if the account information is on your credit report and the consumer doesn't want it, it can be disputed, and they condone the removal of the authorized users. And it's practice. Experian is doing it on a regular basis. TransUnion is doing it once it's disputed. Okay, well, we have your argument, and your red light is on. Oh. It was a privilege. I appreciate the time. Thank you. The court will stand in recess.